William Hill Robinson v. Commissioner.
Robinson v. Commissioner
Docket No. 9788.
United States Tax Court
1947 Tax Ct. Memo LEXIS 147; 6 T.C.M. (CCH) 838; T.C.M. (RIA) 47200; July 9, 1947
*147 S. P. Cain, Esq., Cairo, Ga., for the petitioner. Edward L. Potter, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: The Commissioner determined deficiencies in petitioner's income tax for the taxable years ending August 31, 1942 and 1944 in the respective amounts of $9,963.55 and $105.16. The deficiencies result from numerous adjustments but only two are alleged to be error by petitioner, both of which pertain to the year ending August 31, 1942. The question is whether respondent properly disallowed certain losses claimed by petitioner as resulting from bad debts and worthless stock. The returns were filed with the collector of internal revenue for the district of Georgia. Findings of Fact In 1922 petitioner organized the Robinson Syrup Company, a Georgia corporation, hereinafter referred to as the Company. Petitioner transferred to the Company at the time of its organization certain assets which were set up on the Company's books as follows; brick building in which were located machinery and equipment, $20,000; account receivable, $5,000; merchandise inventory, $24,241.70. Paid-in capital was stated to be $25,000 and there *148 was an account payable to petitioner in the amount of $24,241.70 offsetting the merchandise inventory item. The Company issued 250 shares of stock at a par value of $100 each. Petitioner received 200 and each of his two stepsons received 25 shares. In 1925 petitioner sold 125 shares to W. B. Roddenbery at par, i.e., $12,500. By 1932 petitioner owned only 50 shares. At the time of the above sales the Company issued to petitioner four promissory notes as follows: one note for $4,000 payable September 1, 1925, one for $4,320 payable September 1, 1926, one for $4,640 payable September 1, 1927, and one for $3,968 payable September 1, 1928. The face amount of these notes aggregated $16,928. This amount was intended to represent surplus Company funds and the notes were issued petitioner therefor as an adjustment since he had sold his stock to Roddenbery at par rather than at book value. [1] In 1932 due to general depressed economic conditions and other reasons the Company was in financial difficulties. It needed to borrow money. Roddenbery notified petitioner and his two stepsons that they would have to transfer their stock to Roddenbery and cancel the *149 notes above mentioned before the local bank would extend the Company a line of credit. Roddenbery and his sons promised petitioner that if petitioner would cancel the notes and transfer his stock to Roddenbery that they, the Roddenberys, would see to it that petitioner would be repaid the amount of the notes and would be returned the 50 shares of stock when and if conditions improved and the Company got back on its feet. Petitioner agreed to cancel the notes and transfer his stock as requested because he was interested in the survival of the Company for various reasons. One such reason was that some of his relatives were involved with the Company. Another reason was that he was interested in the continuance of local enterprise. Petitioner considered it to his personal interest to comply with the Roddenberys' request. Each of the four notes was cancelled with the following notation: "This note has been satisfied and is hereby cancelled June 1, 1932" over petitioner's signature. The notes were then returned to the Company's possession. Also on June 1, 1932, petitioner by endorsement assigned and transferred to Roddenbery a certificate for 50 shares of the Company's stock. Petitioner *150 received a letter from the Roddenberys dated August 24, 1942. This letter stated that the Company's charter expires in September and advised that: "We do not think there is any chance or hope for the corporation ever paying its debts, therefore, in our petition for renewal of the charter, we are requesting the capital stock to be valued at a nominal sum of $1,000.00 only. We will continue to operate the corporation after this new start, for by such handling we expect to be able to possibly realize on a small amount of labels, stationery, etc. Considering all assets of the corporation, it is definite that the liabilities of the corporation are several times the amount of any assets." In a schedule attached to his return for the fiscal year ending August 31, 1942, petitioner stated: "Bad Debts "Notes of Robinson Syrup Co., dated June 15, 1925, in payment of assets purchased from W. H. Robinson. In August 1942 the company announced that it had given up hope of being able to liquidate its debt and was writing down its capital to a nominal figure. There are no tangible assets against which to enforce the debt. Int. to
Due
Amount
Maturity
Principal
9-1-25
4,000.00
less paid
2,992.22
1,007.78
9-1-26
4,320.00
520.00
3,800.00
9-1-27
4,640.00
840.00
3,800.00
9-1-28
3,968.00
168.00
3,800.00
Total loss
$12,407.78
*151 "Loss on Worthless Stock "Stock Certificate No. 8 in Robinson Syrup Co., 50 shares, cost $5,000.00, became worthless in August 1942. Longterm capital loss limitation $2,500.00, or 50%." Respondent, in his explanation accompanying his deficiency notice, stated that the bad debt and worthless stock deductions had been disallowed because they had become worthless prior to the taxable year. Opinion One of the determinative factors here is the character and nature of the Roddenbery's promises to petitioner at the time petitioner transferred his stock and cancelled the notes. The promises were oral. What testimony there is of the scope, nature and character of the promises is not altogether satisfactory. From what testimony there is, however, it appears that the promises were conditional promises. In other words, the Roddenbery's undertaking was to restore petitioner to his former standing if the subsequent operations of the Company permitted. From this it appears that the Roddenberys did not promise to make petitioner whole in any event but only if and when the Company's finances might permit. Such promises would only become binding, if at all, when and if the conditions precedent *152 occurred. There is nothing in the record to indicate that such conditions ever did occur. Therefore, petitioner has in our opinion failed to prove either the existence of a debt or the ownership of the stock. Absent the occurrance of the conditions petitioner was owed nothing on account of the notes nor was he entitled to be revested with stock ownership. The development of a situation in 1942 which may have indicated that the conditions would never occur does not render deductible unowed debts or unowned stock. Furthermore, even if petitioner had established these factors there is no satisfactory showing that either the debt or the stock had any value at the commencement of the tax year in question. Petitioner claims that the note cancellation and stock transfer were without consideration and were, therefore, ineffective. From this petitioner argues that he must be considered as having never cancelled the notes or having transferred the stock. We think there was ample consideration for petitioner's action in these respects. He testified that he had complied with the Roddenberys' request because his relatives were involved, because he was anxious to have local enterprise survive *153 and because he considered it to his own personal interest. In view of such testimony it can not be said that there was a failure of consideration. Furthermore, as has been indicated above, even if petitioner's position were accepted in this respect there still would remain the failure to prove value as of the commencement of the year in question. With respect to the notes there is a further ground for disallowance. It appears and we have found that the notes originally represented an amount of surplus paid to petitioner to compensate for his sale of stock to Roddenbery for par rather than book value. [2] In other words, the notes were essentially dividends. There is no indication that any amount was reported by petitioner as income when these notes were received by him. The worthlessness of the notes on any theory would therefore represent anticipated income never reported which failed to materialize. It is well settled that such circumstances do not give rise to deductions for income tax purposes. For the reasons indicated we hold that respondent's disallowance must be sustained. *154 Decision will be entered for respondent. Footnotes
1. See footnote 2, infra.↩
2. There is some ambiguity in the record as to whether the amount represented surplus, as we have found, or whether it represented the unpaid balance due petitioner on account of the merchandise inventory he originally transferred to the Company. Petitioner in his statement of facts on brief in this connection says: "The consideration for the notes was not definitely shown but being either a distribution of the surplus or payment of the account owing by the corporation to the taxpayer, or partially both." Under these circumstances and for other reasons we have felt justified in finding that the notes represented surplus and were in adjustment of petitioner's sale of stock at par rather than at book value.↩